No. 23-40605

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

Texas Medical Association; Tyler Regional Hospital, L.L.C.; Dr. Adam Corley,
*Plaintiffs-Appellees,*

v.

United States Department of Health and Human Services; Office of Personnel Management; United States Department of Labor; United States Department of Treasury; Robert F. Kennedy, Jr., Secretary, U.S. Department of Health and Human Services, in his official capacity; Scott Kupor, in his official capacity as the Director of the Office of Personnel Management; Scott Bessent, Secretary, U.S. Department of Treasury, in his official capacity; Lori Chavez-DeRemer, Secretary, U.S. Department of Labor, in her official capacity,
*Defendants-Appellants.*

LifeNet, Incorporated; Air Methods Corporation; Rocky Mountain Holdings, L.L.C.; East Texas Air One, L.L.C.
*Plaintiffs-Appellees,*

v.

United States Department of Health and Human Services; Office of Personnel Management; United States Department of Labor; United States Department of Treasury; Robert F. Kennedy, Jr, Secretary, U.S. Department of Health and Human Services, in his official capacity; Scott Kupor, in his official capacity as the Director of the Office of Personnel Management; Scott Bessent, Secretary, U.S. Department of Treasury, in his official capacity; Lori Chavez-DeRemer, Secretary, U.S. Department of Labor, in her official capacity,
*Defendants-Appellants.*

On Appeal from the United States District Court
for the Eastern District of Texas

## ADDENDUM TO EN BANC BRIEF FOR APPELLANTS

BRETT A. SHUMATE
*Assistant Attorney General*

JAY R. COMBS
*Acting United States Attorney*

COURTNEY L. DIXON
KEVIN B. SOTER
*Attorneys, Appellate Staff*
*Civil Division, Room 7222*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 305-1754*

**ADDENDUM**

# TABLE OF CONTENTS

42 U.S.C. § 300gg-111..................................................................................A1

42 U.S.C. § 300gg-112................................................................................ A15

45 C.F.R. § 149.130.................................................................................... A20

45 C.F.R. § 149.140.................................................................................... A21

**42 U.S.C. § 300gg-111 (excerpts)**

**§ 300gg-111.  Preventing surprise medical bills**

**(a) Coverage of emergency services**

**(1) In general**

If a group health plan, or a health insurance issuer offering group or individual health insurance coverage, provides or covers any benefits with respect to services in an emergency department of a hospital or with respect to emergency services in an independent freestanding emergency department (as defined in paragraph (3)(D)), the plan or issuer shall cover emergency services (as defined in paragraph (3)(C))—

(A) without the need for any prior authorization determination;

(B) whether the health care provider furnishing such services is a participating provider or a participating emergency facility, as applicable, with respect to such services;

(C) in a manner so that, if such services are provided to a participant, beneficiary, or enrollee by a nonparticipating provider or a nonparticipating emergency facility—

(i) such services will be provided without imposing any requirement under the plan or coverage for prior authorization of services or any limitation on coverage that is more restrictive than the requirements or limitations that apply to emergency services received from participating providers and participating emergency facilities with respect to such plan or coverage, respectively;

(ii) the cost-sharing requirement is not greater than the requirement that would apply if such services were provided by a participating provider or a participating emergency facility;

(iii) such cost-sharing requirement is calculated as if the total amount that would have been charged for such services by such participating provider or participating emergency facility were equal to the recognized amount (as defined in paragraph (3)(H)) for such services, plan or coverage, and year;

(iv) the group health plan or health insurance issuer, respectively—

(I) not later than 30 calendar days after the bill for such services is transmitted by such provider or facility, sends to the provider or

A1

facility, as applicable, an initial payment or notice of denial of payment; and

(II) pays a total plan or coverage payment directly to such provider or facility, respectively (in accordance, if applicable, with the timing requirement described in subsection (c)(6)) that is, with application of any initial payment under subclause (I), equal to the amount by which the out-of-network rate (as defined in paragraph (3)(K)) for such services exceeds the cost-sharing amount for such services (as determined in accordance with clauses (ii) and (iii)) and year; and

(v) any cost-sharing payments made by the participant, beneficiary, or enrollee with respect to such emergency services so furnished shall be counted toward any in-network deductible or out-of-pocket maximums applied under the plan or coverage, respectively (and such in-network deductible and out-of-pocket maximums shall be applied) in the same manner as if such cost-sharing payments were made with respect to emergency services furnished by a participating provider or a participating emergency facility; and

(D) without regard to any other term or condition of such coverage (other than exclusion or coordination of benefits, or an affiliation or waiting period, permitted under section 300gg-3 of this title, including as incorporated pursuant to section 1185d of title 29 and section 9815 of title 26, and other than applicable cost-sharing).

\* \* \*

**(B) Rulemaking**

Not later than July 1, 2021, the Secretary, in consultation with the Secretary of Labor and the Secretary of the Treasury, shall establish through rulemaking—

(i) the methodology the group health plan or health insurance issuer offering group or individual health insurance coverage shall use to determine the qualifying payment amount, differentiating by individual market, large group market, and small group market;

(ii) the information such plan or issuer, respectively, shall share with the nonparticipating provider or nonparticipating facility, as applicable, when making such a determination;

(iii) the geographic regions applied for purposes of this subparagraph, taking into account access to items and services in rural and underserved

areas, including health professional shortage areas, as defined in section 254e of this title; and

(iv) a process to receive complaints of violations of the requirements described in subclauses (I) and (II) of subparagraph (A)(i) by group health plans and health insurance issuers offering group or individual health insurance coverage.

Such rulemaking shall take into account payments that are made by such plan or issuer, respectively, that are not on a fee-for-service basis. Such methodology may account for relevant payment adjustments that take into account quality or facility type (including higher acuity settings and the case-mix of various facility types) that are otherwise taken into account for purposes of determining payment amounts with respect to participating facilities. In carrying out clause (iii), the Secretary shall consult with the National Association of Insurance Commissioners to establish the geographic regions under such clause and shall periodically update such regions, as appropriate, taking into account the findings of the report submitted under section 109(a) of the No Surprises Act.

## (3) Definitions

* * *

## (E) Qualifying payment amount

### (i) In general

The term "qualifying payment amount" means, subject to clauses (ii) and (iii), with respect to a sponsor of a group health plan and health insurance issuer offering group or individual health insurance coverage—

(I) for an item or service furnished during 2022, the median of the contracted rates recognized by the plan or issuer, respectively (determined with respect to all such plans of such sponsor or all such coverage offered by such issuer that are offered within the same insurance market (specified in subclause (I), (II), (III), or (IV) of clause (iv)) as the plan or coverage) as the total maximum payment (including the cost-sharing amount imposed for such item or service and the amount to be paid by the plan or issuer, respectively) under such plans or coverage, respectively, on January 31, 2019, for the same or a similar item or service that is provided by a provider in the same or similar specialty and provided in the geographic region in which the item or service is furnished, consistent with the methodology established by the Secretary under paragraph (2)(B),

A3

increased by the percentage increase in the consumer price index for all urban consumers (United States city average) over 2019, such percentage increase over 2020, and such percentage increase over 2021; and

(II) for an item or service furnished during 2023 or a subsequent year, the qualifying payment amount determined under this clause for such an item or service furnished in the previous year, increased by the percentage increase in the consumer price index for all urban consumers (United States city average) over such previous year.

**(ii) New plans and coverage**

The term "qualifying payment amount" means, with respect to a sponsor of a group health plan or health insurance issuer offering group or individual health insurance coverage in a geographic region in which such sponsor or issuer, respectively, did not offer any group health plan or health insurance coverage during 2019—

(I) for the first year in which such group health plan, group health insurance coverage, or individual health insurance coverage, respectively, is offered in such region, a rate (determined in accordance with a methodology established by the Secretary) for items and services that are covered by such plan or coverage and furnished during such first year; and

(II) for each subsequent year such group health plan, group health insurance coverage, or individual health insurance coverage, respectively, is offered in such region, the qualifying payment amount determined under this clause for such items and services furnished in the previous year, increased by the percentage increase in the consumer price index for all urban consumers (United States city average) over such previous year.

**(iii) Insufficient information; newly covered items and services**

In the case of a sponsor of a group health plan or health insurance issuer offering group or individual health insurance coverage that does not have sufficient information to calculate the median of the contracted rates described in clause (i)(I) in 2019 (or, in the case of a newly covered item or service (as defined in clause (v)(III)), in the first coverage year (as defined in clause (v)(I) for such item or service with respect to such plan or coverage) for an item or service (including with respect to provider type, or amount, of claims for items or services (as determined by the Secretary) provided in a particular geographic region (other than in a case

with respect to which clause (ii) applies)) the term "qualifying payment amount"—

(I) for an item or service furnished during 2022 (or, in the case of a newly covered item or service, during the first coverage year for such item or service with respect to such plan or coverage), means such rate for such item or service determined by the sponsor or issuer, respectively, through use of any database that is determined, in accordance with rulemaking described in paragraph (2)(B), to not have any conflicts of interest and to have sufficient information reflecting allowed amounts paid to a health care provider or facility for relevant services furnished in the applicable geographic region (such as a State all-payer claims database);

(II) for an item or service furnished in a subsequent year (before the first sufficient information year (as defined in clause (v)(II)) for such item or service with respect to such plan or coverage), means the rate determined under subclause (I) or this subclause, as applicable, for such item or service for the year previous to such subsequent year, increased by the percentage increase in the consumer price index for all urban consumers (United States city average) over such previous year;

(III) for an item or service furnished in the first sufficient information year for such item or service with respect to such plan or coverage, has the meaning given the term qualifying payment amount in clause (i)(I), except that in applying such clause to such item or service, the reference to "furnished during 2022" shall be treated as a reference to furnished during such first sufficient information year, the reference to "in 2019" shall be treated as a reference to such sufficient information year, and the increase described in such clause shall not be applied; and

(IV) for an item or service furnished in any year subsequent to the first sufficient information year for such item or service with respect to such plan or coverage, has the meaning given such term in clause (i)(II), except that in applying such clause to such item or service, the reference to "furnished during 2023 or a subsequent year" shall be treated as a reference to furnished during the year after such first sufficient information year or a subsequent year.

**(iv) Insurance market**

For purposes of clause (i)(I), a health insurance market specified in this clause is one of the following:

(I) The individual market.

(II) The large group market (other than plans described in subclause (IV)).

(III) The small group market (other than plans described in subclause (IV)).

(IV) In the case of a self-insured group health plan, other self-insured group health plans.

**(v) Definitions**

For purposes of this subparagraph:

**(I) First coverage year**

The term "first coverage year" means, with respect to a group health plan or group or individual health insurance coverage offered by a health insurance issuer and an item or service for which coverage is not offered in 2019 under such plan or coverage, the first year after 2019 for which coverage for such item or service is offered under such plan or health insurance coverage.

**(II) First sufficient information year**

The term "first sufficient information year" means, with respect to a group health plan or group or individual health insurance coverage offered by a health insurance issuer—

(aa) in the case of an item or service for which the plan or coverage does not have sufficient information to calculate the median of the contracted rates described in clause (i)(I) in 2019, the first year subsequent to 2022 for which the sponsor or issuer has such sufficient information to calculate the median of such contracted rates in the year previous to such first subsequent year; and

(bb) in the case of a newly covered item or service, the first year subsequent to the first coverage year for such item or service with respect to such plan or coverage for which the sponsor or issuer has sufficient information to calculate the median of the contracted rates described in clause (i)(I) in the year previous to such first subsequent year.

A6

**(III) Newly covered item or service**

The term "newly covered item or service" means, with respect to a group health plan or group or individual health insurance issuer offering health insurance coverage, an item or service for which coverage was not offered in 2019 under such plan or coverage, but is offered under such plan or coverage in a year after 2019.

\* \* \*

**(H) Recognized amount**

The term "recognized amount" means, with respect to an item or service furnished by a nonparticipating provider or nonparticipating emergency facility during a year and a group health plan or group or individual health insurance coverage offered by a health insurance issuer—

(i) subject to clause (iii), in the case of such item or service furnished in a State that has in effect a specified State law with respect to such plan, coverage, or issuer, respectively; such a nonparticipating provider or nonparticipating emergency facility; and such an item or service, the amount determined in accordance with such law;

(ii) subject to clause (iii), in the case of such item or service furnished in a State that does not have in effect a specified State law, with respect to such plan, coverage, or issuer, respectively; such a nonparticipating provider or nonparticipating emergency facility; and such an item or service, the amount that is the qualifying payment amount (as defined in subparagraph (E)) for such year and determined in accordance with rulemaking described in paragraph (2)(B)) for such item or service; or

(iii) in the case of such item or service furnished in a State with an All-Payer Model Agreement under section 1115A of the Social Security Act [42 U.S.C. 1315a], the amount that the State approves under such system for such item or service so furnished.

\*\*\*

**(K) Out-of-network rate**

The term "out-of-network rate" means, with respect to an item or service furnished in a State during a year to a participant, beneficiary, or enrollee of a group health plan or group or individual health insurance coverage offered by a health insurance issuer receiving such item or service from a nonparticipating provider or nonparticipating emergency facility—

(i) subject to clause (iii), in the case of such item or service furnished in a State that has in effect a specified State law with respect to such plan, coverage, or issuer, respectively; such a nonparticipating provider or nonparticipating emergency facility; and such an item or service, the amount determined in accordance with such law;

(ii) subject to clause (iii), in the case such State does not have in effect such a law with respect to such item or service, plan, and provider or facility—

(I) subject to subclause (II), if the provider or facility (as applicable) and such plan or coverage agree on an amount of payment (including if such agreed on amount is the initial payment sent by the plan under subsection (a)(1)(C)(iv)(I), subsection (b)(1)(C), or section 300gg-112(a)(3)(A) of this title, as applicable, or is agreed on through open negotiations under subsection (c)(1)) with respect to such item or service, such agreed on amount; or

(II) if such provider or facility (as applicable) and such plan or coverage enter the independent dispute resolution process under subsection (c) and do not so agree before the date on which a certified IDR entity (as defined in paragraph (4) of such subsection) makes a determination with respect to such item or service under such subsection, the amount of such determination; or

(iii) in the case such State has an All-Payer Model Agreement under section 1115A of the Social Security Act [42 U.S.C. 1315a], the amount that the State approves under such system for such item or service so furnished.

**(L) Cost-sharing**

The term "cost-sharing" includes copayments, coinsurance, and deductibles.

## (b) Coverage of non-emergency services performed by nonparticipating providers at certain participating facilities

### (1) In general

In the case of items or services (other than emergency services to which subsection (a) applies) for which any benefits are provided or covered by a group health plan or health insurance issuer offering group or individual health insurance coverage furnished to a participant, beneficiary, or enrollee of such plan or coverage by a nonparticipating provider (as defined in subsection (a)(3)(G)(i)) (and who, with respect to such items and services, has not satisfied the notice and

consent criteria of section 300gg-132(d) of this title) with respect to a visit (as defined by the Secretary in accordance with paragraph (2)(B)) at a participating health care facility (as defined in paragraph (2)(A)), with respect to such plan or coverage, respectively, the plan or coverage, respectively—

(A) shall not impose on such participant, beneficiary, or enrollee a cost-sharing requirement for such items and services so furnished that is greater than the cost-sharing requirement that would apply under such plan or coverage, respectively, had such items or services been furnished by a participating provider (as defined in subsection (a)(3)(G)(ii));

(B) shall calculate such cost-sharing requirement as if the total amount that would have been charged for such items and services by such participating provider were equal to the recognized amount (as defined in subsection (a)(3)(H)) for such items and services, plan or coverage, and year;

(C) not later than 30 calendar days after the bill for such services is transmitted by such provider, shall send to the provider an initial payment or notice of denial of payment;

(D) shall pay a total plan or coverage payment directly, in accordance, if applicable, with the timing requirement described in subsection (c)(6), to such provider furnishing such items and services to such participant, beneficiary, or enrollee that is, with application of any initial payment under subparagraph (C), equal to the amount by which the out-of-network rate (as defined in subsection (a)(3)(K)) for such items and services involved exceeds the cost-sharing amount imposed under the plan or coverage, respectively, for such items and services (as determined in accordance with subparagraphs (A) and (B)) and year; and

(E) shall count toward any in-network deductible and in-network out-of-pocket maximums (as applicable) applied under the plan or coverage, respectively, any cost-sharing payments made by the participant, beneficiary, or enrollee (and such in-network deductible and out-of-pocket maximums shall be applied) with respect to such items and services so furnished in the same manner as if such cost-sharing payments were with respect to items and services furnished by a participating provider.

\*\*\*

**(c) Determination of out-of-network rates to be paid by health plans; independent dispute resolution process**

**(1) Determination through open negotiation**

**(A) In general**

With respect to an item or service furnished in a year by a nonparticipating provider or a nonparticipating facility, with respect to a group health plan or health insurance issuer offering group or individual health insurance coverage, in a State described in subsection (a)(3)(K)(ii) with respect to such plan or coverage and provider or facility, and for which a payment is required to be made by the plan or coverage pursuant to subsection (a)(1) or (b)(1), the provider or facility (as applicable) or plan or coverage may, during the 30-day period beginning on the day the provider or facility receives an initial payment or a notice of denial of payment from the plan or coverage regarding a claim for payment for such item or service, initiate open negotiations under this paragraph between such provider or facility and plan or coverage for purposes of determining, during the open negotiation period, an amount agreed on by such provider or facility, respectively, and such plan or coverage for payment (including any cost-sharing) for such item or service. For purposes of this subsection, the open negotiation period, with respect to an item or service, is the 30-day period beginning on the date of initiation of the negotiations with respect to such item or service.

**(B) Accessing independent dispute resolution process in case of failed negotiations**

In the case of open negotiations pursuant to subparagraph (A), with respect to an item or service, that do not result in a determination of an amount of payment for such item or service by the last day of the open negotiation period described in such subparagraph with respect to such item or service, the provider or facility (as applicable) or group health plan or health insurance issuer offering group or individual health insurance coverage that was party to such negotiations may, during the 4-day period beginning on the day after such open negotiation period, initiate the independent dispute resolution process under paragraph (2) with respect to such item or service. The independent dispute resolution process shall be initiated by a party pursuant to the previous sentence by submission to the other party and to the Secretary of a notification (containing such information as specified by the Secretary) and for purposes of this subsection, the date of initiation of such process shall be the date of such submission or such other date specified by the Secretary pursuant to regulations that is not later than the date of receipt of such notification by both the other party and the Secretary.

**(2) Independent dispute resolution process available in case of failed open negotiations**

**(A) Establishment**

Not later than 1 year after December 27, 2020, the Secretary, jointly with the Secretary of Labor and the Secretary of the Treasury, shall establish by regulation one independent dispute resolution process (referred to in this subsection as the "IDR process") under which, in the case of an item or service with respect to which a provider or facility (as applicable) or group health plan or health insurance issuer offering group or individual health insurance coverage submits a notification under paragraph (1)(B) (in this subsection referred to as a "qualified IDR item or service"), a certified IDR entity under paragraph (4) determines, subject to subparagraph (B) and in accordance with the succeeding provisions of this subsection, the amount of payment under the plan or coverage for such item or service furnished by such provider or facility.

* * *

**(5) Payment determination**

**(A) In general**

Not later than 30 days after the date of selection of the certified IDR entity with respect to a determination for a qualified IDR item or service, the certified IDR entity shall—

(i) taking into account the considerations specified in subparagraph (C), select one of the offers submitted under subparagraph (B) to be the amount of payment for such item or service determined under this subsection for purposes of subsection (a)(1) or (b)(1), as applicable; and

(ii) notify the provider or facility and the group health plan or health insurance issuer offering group or individual health insurance coverage party to such determination of the offer selected under clause (i).

**(B) Submission of offers**

Not later than 10 days after the date of selection of the certified IDR entity with respect to a determination for a qualified IDR item or service, the provider or facility and the group health plan or health insurance issuer offering group or individual health insurance coverage party to such determination—

(i) shall each submit to the certified IDR entity with respect to such determination—

(I) an offer for a payment amount for such item or service furnished by such provider or facility; and

(II) such information as requested by the certified IDR entity relating to such offer; and

(ii) may each submit to the certified IDR entity with respect to such determination any information relating to such offer submitted by either party, including information relating to any circumstance described in subparagraph (C)(ii).

**(C) Considerations in determination**

**(i) In general**

In determining which offer is the payment to be applied pursuant to this paragraph, the certified IDR entity, with respect to the determination for a qualified IDR item or service shall consider—

(I) the qualifying payment amounts (as defined in subsection (a)(3)(E)) for the applicable year for items or services that are comparable to the qualified IDR item or service and that are furnished in the same geographic region (as defined by the Secretary for purposes of such subsection) as such qualified IDR item or service; and

(II) subject to subparagraph (D), information on any circumstance described in clause (ii), such information as requested in subparagraph (B)(i)(II), and any additional information provided in subparagraph (B)(ii).

**(ii) Additional circumstances**

For purposes of clause (i)(II), the circumstances described in this clause are, with respect to a qualified IDR item or service of a nonparticipating provider, nonparticipating emergency facility, group health plan, or health insurance issuer of group or individual health insurance coverage the following:

(I) The level of training, experience, and quality and outcomes measurements of the provider or facility that furnished such item or service (such as those endorsed by the consensus-based entity authorized in section 1890 of the Social Security Act [42 U.S.C. 1395aaa]).

(II) The market share held by the nonparticipating provider or facility or that of the plan or issuer in the geographic region in which the item or service was provided.

(III) The acuity of the individual receiving such item or service or the complexity of furnishing such item or service to such individual.

(IV) The teaching status, case mix, and scope of services of the nonparticipating facility that furnished such item or service.

(V) Demonstrations of good faith efforts (or lack of good faith efforts) made by the nonparticipating provider or nonparticipating facility or the plan or issuer to enter into network agreements and, if applicable, contracted rates between the provider or facility, as applicable, and the plan or issuer, as applicable, during the previous 4 plan years.

**(D) Prohibition on consideration of certain factors**

In determining which offer is the payment to be applied with respect to qualified IDR items and services furnished by a provider or facility, the certified IDR entity with respect to a determination shall not consider usual and customary charges, the amount that would have been billed by such provider or facility with respect to such items and services had the provisions of section 300gg-131 or 300gg-132 of this title (as applicable) not applied, or the payment or reimbursement rate for such items and services furnished by such provider or facility payable by a public payor, including under the Medicare program under title XVIII of the Social Security Act [42 U.S.C. 1395 et seq.], under the Medicaid program under title XIX of such Act [42 U.S.C. 1396 et seq.], under the Children's Health Insurance Program under title XXI of such Act [42 U.S.C. 1397aa et seq.], under the TRICARE program under chapter 55 of title 10, or under chapter 17 of title 38.

**(E) Effects of determination**

**(i) In general**

A determination of a certified IDR entity under subparagraph (A)—

(I) shall be binding upon the parties involved, in the absence of a fraudulent claim or evidence of misrepresentation of facts presented to the IDR entity involved regarding such claim; and

(II) shall not be subject to judicial review, except in a case described in any of paragraphs (1) through (4) of section 10(a) of title 9.

\* \* \*

**(6) Timing of payment**

The total plan or coverage payment required pursuant to subsection (a)(1) or (b)(1), with respect to a qualified IDR item or service for which a determination is made under paragraph (5)(A) or with respect to an item or service for which a payment amount is determined under open negotiations under paragraph (1), shall

A13

be made directly to the nonparticipating provider or facility not later than 30 days after the date on which such determination is made

\* \* \*

**42 U.S.C. § 300gg-112 (excerpts)**

**§ 300gg-112.  Ending surprise air ambulance bills**

**(a) In general**

In the case of a participant, beneficiary, or enrollee who is in a group health plan or group or individual health insurance coverage offered by a health insurance issuer and who receives air ambulance services from a nonparticipating provider (as defined in section 300gg-111(a)(3)(G) of this title) with respect to such plan or coverage, if such services would be covered if provided by a participating provider (as defined in such section) with respect to such plan or coverage—

(1) the cost-sharing requirement with respect to such services shall be the same requirement that would apply if such services were provided by such a participating provider, and any coinsurance or deductible shall be based on rates that would apply for such services if they were furnished by such a participating provider;

(2) such cost-sharing amounts shall be counted towards the in-network deductible and in-network out-of-pocket maximum amount under the plan or coverage for the plan year (and such in-network deductible shall be applied) with respect to such items and services so furnished in the same manner as if such cost-sharing payments were with respect to items and services furnished by a participating provider; and

(3) the group health plan or health insurance issuer, respectively, shall—

(A) not later than 30 calendar days after the bill for such services is transmitted by such provider, send to the provider, an initial payment or notice of denial of payment; and

(B) pay a total plan or coverage payment, in accordance with, if applicable, subsection (b)(6), directly to such provider furnishing such services to such participant, beneficiary, or enrollee that is, with application of any initial payment under subparagraph (A), equal to the amount by which the out-of-network rate (as defined in section 300gg-111(a)(3)(K) of this title) for such services and year involved exceeds the cost-sharing amount imposed under the plan or coverage, respectively, for such services (as determined in accordance with paragraphs (1) and (2)).

**(b) Determination of out-of-network rates to be paid by health plans; independent dispute resolution process**

**(1) Determination through open negotiation**

**(A) In general**

A15

With respect to air ambulance services furnished in a year by a nonparticipating provider, with respect to a group health plan or health insurance issuer offering group or individual health insurance coverage, and for which a payment is required to be made by the plan or coverage pursuant to subsection (a)(3), the provider or plan or coverage may, during the 30-day period beginning on the day the provider receives an initial payment or a notice of denial of payment from the plan or coverage regarding a claim for payment for such service, initiate open negotiations under this paragraph between such provider and plan or coverage for purposes of determining, during the open negotiation period, an amount agreed on by such provider, and such plan or coverage for payment (including any cost-sharing) for such service. For purposes of this subsection, the open negotiation period, with respect to air ambulance services, is the 30-day period beginning on the date of initiation of the negotiations with respect to such services.

**(B) Accessing independent dispute resolution process in case of failed negotiations**

In the case of open negotiations pursuant to subparagraph (A), with respect to air ambulance services, that do not result in a determination of an amount of payment for such services by the last day of the open negotiation period described in such subparagraph with respect to such services, the provider or group health plan or health insurance issuer offering group or individual health insurance coverage that was party to such negotiations may, during the 4-day period beginning on the day after such open negotiation period, initiate the independent dispute resolution process under paragraph (2) with respect to such item or service. The independent dispute resolution process shall be initiated by a party pursuant to the previous sentence by submission to the other party and to the Secretary of a notification (containing such information as specified by the Secretary) and for purposes of this subsection, the date of initiation of such process shall be the date of such submission or such other date specified by the Secretary pursuant to regulations that is not later than the date of receipt of such notification by both the other party and the Secretary.

**(2) Independent dispute resolution process available in case of failed open negotiations**

**(A) Establishment**

Not later than 1 year after December 27, 2020, the Secretary, jointly with the Secretary of Labor and the Secretary of the Treasury, shall establish by regulation one independent dispute resolution process (referred to in this

subsection as the "IDR process") under which, in the case of air ambulance services with respect to which a provider or group health plan or health insurance issuer offering group or individual health insurance coverage submits a notification under paragraph (1)(B) (in this subsection referred to as a "qualified IDR air ambulance services"), a certified IDR entity under paragraph (4) determines, subject to subparagraph (B) and in accordance with the succeeding provisions of this subsection, the amount of payment under the plan or coverage for such services furnished by such provider.

* * *

**(5) Payment determination**

**(A) In general**

Not later than 30 days after the date of selection of the certified IDR entity with respect to a determination for qualified IDR ambulance services, the certified IDR entity shall--

(i) taking into account the considerations specified in subparagraph (C), select one of the offers submitted under subparagraph (B) to be the amount of payment for such services determined under this subsection for purposes of subsection (a)(3); and

(ii) notify the provider or facility and the group health plan or health insurance issuer offering group or individual health insurance coverage party to such determination of the offer selected under clause (i).

**(B) Submission of offers**

Not later than 10 days after the date of selection of the certified IDR entity with respect to a determination for qualified IDR air ambulance services, the provider and the group health plan or health insurance issuer offering group or individual health insurance coverage party to such determination--

(i) shall each submit to the certified IDR entity with respect to such determination--

(I) an offer for a payment amount for such services furnished by such provider; and

(II) such information as requested by the certified IDR entity relating to such offer; and

(ii) may each submit to the certified IDR entity with respect to such determination any information relating to such offer submitted by either

A17

party, including information relating to any circumstance described in subparagraph (C)(ii).

**(C) Considerations in determination**

**(i) In general**

In determining which offer is the payment to be applied pursuant to this paragraph, the certified IDR entity, with respect to the determination for a qualified IDR air ambulance service shall consider—

(I) the qualifying payment amounts (as defined in section 300gg-111(a)(3)(E) of this title) for the applicable year for items or services that are comparable to the qualified IDR air ambulance service and that are furnished in the same geographic region (as defined by the Secretary for purposes of such subsection) as such qualified IDR air ambulance service; and

(II) subject to clause (iii), information on any circumstance described in clause (ii), such information as requested in subparagraph (B)(i)(II), and any additional information provided in subparagraph (B)(ii).

**(ii) Additional circumstances**

For purposes of clause (i)(II), the circumstances described in this clause are, with respect to air ambulance services included in the notification submitted under paragraph (1)(B) of a nonparticipating provider, group health plan, or health insurance issuer the following:

(I) The quality and outcomes measurements of the provider that furnished such services.

(II) The acuity of the individual receiving such services or the complexity of furnishing such services to such individual.

(III) The training, experience, and quality of the medical personnel that furnished such services.

(IV) Ambulance vehicle type, including the clinical capability level of such vehicle.

(V) Population density of the pick up location (such as urban, suburban, rural, or frontier).

(VI) Demonstrations of good faith efforts (or lack of good faith efforts) made by the nonparticipating provider or nonparticipating facility or the plan or issuer to enter into network agreements and, if

applicable, contracted rates between the provider and the plan or issuer, as applicable, during the previous 4 plan years.

### (iii) Prohibition on consideration of certain factors

In determining which offer is the payment amount to be applied with respect to qualified IDR air ambulance services furnished by a provider, the certified IDR entity with respect to such determination shall not consider usual and customary charges, the amount that would have been billed by such provider with respect to such services had the provisions of section 300gg-135 of this title not applied, or the payment or reimbursement rate for such services furnished by such provider payable by a public payor, including under the Medicare program under title XVIII of the Social Security Act [42 U.S.C. 1395 et seq.], under the Medicaid program under title XIX of such Act [42 U.S.C. 1396 et seq.], under the Children's Health Insurance Program under title XXI of such Act [42 U.S.C. 1397aa et seq.], under the TRICARE program under chapter 55 of title 10, or under chapter 17 of title 38.

### (D) Effects of determination

The provisions of section 300gg-111(c)(5)(E) of this title shall apply with respect to a determination of a certified IDR entity under subparagraph (A), the notification submitted with respect to such determination, the services with respect to such notification, and the parties to such notification in the same manner as such provisions apply with respect to a determination of a certified IDR entity under section 300gg-111(c)(5)(E) of this title, the notification submitted with respect to such determination, the items and services with respect to such notification, and the parties to such notification.

* * *

### (6) Timing of payment

The total plan or coverage payment required pursuant to subsection (a)(3), with respect to qualified IDR air ambulance services for which a determination is made under paragraph (5)(A) or with respect to an air ambulance service for which a payment amount is determined under open negotiations under paragraph (1), shall be made directly to the nonparticipating provider not later than 30 days after the date on which such determination is made.

* * *

**45 C.F.R. § 149.130 (excerpts)**

**§ 149.130.  Preventing surprise medical bills for air ambulance services.**

* * *

(b) Coverage requirements. A plan or issuer described in paragraph (a) of this section must provide coverage of air ambulance services in the following manner—

* * *

    (2) The cost-sharing requirement must be calculated as if the total amount that would have been charged for the services by a participating provider of air ambulance services were equal to the lesser of the qualifying payment amount (as determined in accordance with § 149.140) or the billed amount for the services.

* * *

    (4) The plan or issuer must—

        (i) Not later than 30 calendar days after the bill for the services is transmitted by the provider of air ambulance services, determine whether the services are covered under the plan or coverage and, if the services are covered, send to the provider an initial payment or a notice of denial of payment. For purposes of this paragraph (b)(4)(i), the 30–calendar-day period begins on the date the plan or issuer receives the information necessary to decide a claim for payment for the services.

* * *

A20

**45 C.F.R. § 149.140 (excerpts)**

**§ 149.140.  Methodology for calculating qualifying payment amount.**

(a) *Definitions*. For purposes of this section, the following definitions apply:

(1) *Contracted rate* means the total amount (including cost sharing) that a group health plan or health insurance issuer has contractually agreed to pay a participating provider, facility, or provider of air ambulance services for covered items and services, whether directly or indirectly, including through a third-party administrator or pharmacy benefit manager.  Solely for purposes of this definition, a single case agreement, letter of agreement, or other similar arrangement between a provider, facility, or air ambulance provider and a plan or issuer, used to supplement the network of the plan or coverage for a specific participant, beneficiary, or enrollee in unique circumstances, does not constitute a contract.

\* \* \*

(7) *Geographic region* means—

(i) For items and services other than air ambulance services—

(A) Subject to paragraphs (a)(7)(i)(B) and (C) of this section, one region for each metropolitan statistical area, as described by the U.S. Office of Management and Budget and published by the U.S. Census Bureau, in a State, and one region consisting of all other portions of the State.

(B) If a plan or issuer does not have sufficient information to calculate the median of the contracted rates described in paragraph (b) of this section for an item or service provided in a geographic region described in paragraph (a)(7)(i)(A) of this section, one region consisting of all metropolitan statistical areas, as described by the U.S. Office of Management and Budget and published by the U.S. Census Bureau, in the State, and one region consisting of all other portions of the State.

(C) If a plan or issuer does not have sufficient information to calculate the median of the contracted rates described in paragraph (b) of this section for an item or service provided in a geographic region described in paragraph (a)(7)(i)(B) of this section, one region consisting of all metropolitan statistical areas, as described by the U.S. Office of Management and Budget and published by the U.S. Census Bureau, in each Census division and one region consisting of all other portions of the Census division, as described by the U.S. Census Bureau.

(ii) For air ambulance services—

(A) Subject to paragraph (a)(7)(ii)(B) of this section, one region consisting of all metropolitan statistical areas, as described by the U.S. Office of Management and Budget and published by the U.S. Census Bureau, in the State, and one region consisting of all other portions of the State, determined based on the point of pick-up (as defined in 42 CFR 414.605).

(B) If a plan or issuer does not have sufficient information to calculate the median of the contracted rates described in paragraph (b) of this section for an air ambulance service provided in a geographic region described in paragraph (a)(7)(ii)(A) of this section, one region consisting of all metropolitan statistical areas, as described by the U.S. Office of Management and Budget and published by the U.S. Census Bureau, in each Census division and one region consisting of all other portions of the Census division, as described by the U.S. Census Bureau, determined based on the point of pick-up (as defined in 42 CFR 414.605).

* * *

(16) *Qualifying payment amount* means, with respect to a sponsor of a group health plan or health insurance issuer offering group or individual health insurance coverage, the amount calculated using the methodology described in paragraph (c) of this section.

* * *

(b) *Methodology for calculation of median contracted rate—*

(1) *In general.* The median contracted rate for an item or service is calculated by arranging in order from least to greatest the contracted rates of all group health plans of the plan sponsor (or the administering entity as provided in paragraph (a)(8)(iv) of this section, if applicable) or all group or individual health insurance coverage offered by the issuer in the same insurance market for the same or similar item or service that is provided by a provider in the same or similar specialty or facility of the same or similar facility type and provided in the geographic region in which the item or service is furnished and selecting the middle number. If there are an even number of contracted rates, the median contracted rate is the average of the middle two contracted rates. In determining the median contracted rate, the amount negotiated under each contract is treated as a separate amount. If a plan or issuer has a contract with a provider group or facility, the rate negotiated with that provider group or facility under the contract is treated as a single contracted rate if the same amount applies with respect to all providers of such provider group or facility under the single contract. However, if a plan or issuer has a contract with multiple providers, with separate negotiated rates with each particular provider, each unique contracted rate with an individual

A22

provider constitutes a single contracted rate. Further, if a plan or issuer has separate contracts with individual providers, the contracted rate under each such contract constitutes a single contracted rate (even if the same amount is paid to multiple providers under separate contracts).

(2) *Calculation rules.* In calculating the median contracted rate, a plan or issuer must:

(i) Calculate the median contracted rate with respect to all plans of such sponsor (or the administering entity as provided in paragraph (a)(8)(iv) of this section, if applicable) or all coverage offered by such issuer that are offered in the same insurance market;

(ii) Calculate the median contracted rate using the full contracted rate applicable to the service code, except that the plan or issuer must—

(A) Calculate separate median contracted rates for CPT code modifiers "26" (professional component) and "TC" (technical component);

(B) For anesthesia services, calculate a median contracted rate for the anesthesia conversion factor for each service code;

(C) For air ambulance services, calculate a median contracted rate for the air mileage service codes (A0435 and A0436); and

(D) Where contracted rates otherwise vary based on applying a modifier code, calculate a separate median contracted rate for each such service code-modifier combination;

(iii) In the case of payments made by a plan or issuer that are not on a fee-for-service basis (such as bundled or capitation payments), calculate a median contracted rate for each item or service using the underlying fee schedule rates for the relevant items or services. If the plan or issuer does not have an underlying fee schedule rate for the item or service, it must use the derived amount to calculate the median contracted rate; and

(iv) Exclude risk sharing, bonus, penalty, or other incentive-based or retrospective payments or payment adjustments.

\* \* \*

(d) *Information to be shared about qualifying payment amount.* In cases in which the recognized amount with respect to an item or service furnished by a nonparticipating provider, nonparticipating emergency facility, or nonparticipating provider of air ambulance services is the qualifying payment amount, the plan or issuer must provide in writing, in paper or electronic form, to the provider or facility, as applicable—

A23

(1) With each initial payment or notice of denial of payment under § 149.110, § 149.120, or § 149.130:

(i) The qualifying payment amount for each item or service involved;

* * *

(iii) A statement to certify that, based on the determination of the plan or issuer—

(A) The qualifying payment amount applies for purposes of the recognized amount (or, in the case of air ambulance services, for calculating the participant's, beneficiary's, or enrollee's cost sharing); and

(B) Each qualifying payment amount shared with the provider or facility was determined in compliance with this section;

(iv) A statement that if the provider or facility, as applicable, wishes to initiate a 30–day open negotiation period for purposes of determining the amount of total payment, the provider or facility may contact the appropriate person or office to initiate open negotiation, and that if the 30–day negotiation period does not result in a determination, generally, the provider or facility may initiate the independent dispute resolution process within 4 days after the end of the open negotiation period; and

(v) Contact information, including a telephone number and email address, for the appropriate person or office to initiate open negotiations for purposes of determining an amount of payment (including cost sharing) for such item or service.

(2) In a timely manner upon request of the provider or facility:

(i) Information about whether the qualifying payment amount for items and services involved included contracted rates that were not on a fee-for-service basis for those specific items and services and whether the qualifying payment amount for those items and services was determined using underlying fee schedule rates or a derived amount;

(ii) If a plan or issuer uses an eligible database under paragraph (c)(3) of this section to determine the qualifying payment amount, information to identify which database was used; and

(iii) If a related service code was used to determine the qualifying payment amount for an item or service billed under a new service code under paragraph (c)(4)(i) or (ii) of this section, information to identify the related service code; and

A24

(iv) If applicable, a statement that the plan's or issuer's contracted rates include risk-sharing, bonus, penalty, or other incentive-based or retrospective payments or payment adjustments for the items and services involved (as applicable) that were excluded for purposes of calculating the qualifying payment amount.

* * *