No. 23-40605

# In the United States Court of Appeals for the Fifth Circuit

TEXAS MEDICAL ASSOCIATION; TYLER REGIONAL HOSPITAL, L.L.C., DR. ADAM CORLEY,

*Plaintiffs-Appellees/Cross-Appellants*,

*v.*

U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; OFFICE OF PERSONNEL MANAGEMENT; UNITED STATES DEPARTMENT OF LABOR; UNITED STATES DEPARTMENT OF TREASURY; ROBERT F. KENNEDY, JR., *Secretary, U.S. Department of Health and Human Services, in his official capacity*; CHARLES EZELL, *in his official capacity as the Acting Director of the Office of Personnel Management*; SCOTT BESSENT, *Secretary, U.S. Department of Treasury, in his official capacity*; LORI CHAVEZ-DEREMER, *Acting Secretary, U.S. Department of Labor, in her official capacity*,

*Defendants-Appellants/Cross-Appellees*,

————

LifeNet, Incorporated; Air Methods Corporation; Rocky Mountain Holdings, L.L.C; East Texas Air One, L.L.C,

*Plaintiffs-Appellees/Cross-Appellants*,

*v.*

UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; OFFICE OF PERSONNEL MANAGEMENT; UNITED STATES DEPARTMENT OF LABOR; UNITED STATES DEPARTMENT OF TREASURY; ROBERT F. KENNEDY, JR., *Secretary, U.S. Department of Health and Human Services, in his official capacity*; CHARLES EZELL, *in his official capacity as the Acting Director of the Office of Personnel Management*; SCOTT BESSENT, *Secretary, U.S. Department of Treasury, in his official capacity*; LORI CHAVEZ-DEREMER, *Acting Secretary, U.S. Department of Labor, in her official capacity*,

*Defendants-Appellants*

———

On Appeal from the United States District Court
for the Eastern District of Texas, Amarillo Division

———

# BRIEF FOR THE STATES OF TEXAS, ALASKA, ARKANSAS, FLORIDA, GEORGIA, IDAHO, INDIANA, IOWA, KANSAS, LOUISIANA, MISSOURI, NEBRASKA NORTH DAKOTA, SOUTH CAROLINA, AND TENNESSEE AS AMICI CURIAE IN SUPPORT OF NEITHER PARTY

———

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

WILLIAM R. PETERSON
Solicitor General

WILLIAM F. COLE
Principal Deputy Solicitor General
William.Cole@oag.texas.gov

CHRISTINA CELLA
Special Counsel

KYLE S. TEBO
Special Counsel

*Counsel for Amici Curiae*

## CERTIFICATE OF INTERESTED PERSONS

No. 23-40605

TEXAS MEDICAL ASSOCIATION; TYLER REGIONAL HOSPITAL, L.L.C., DR. ADAM CORLEY,

*Plaintiffs-Appellees/Cross-Appellants*,

*v.*

U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; OFFICE OF PERSONNEL MANAGEMENT; UNITED STATES DEPARTMENT OF LABOR; UNITED STATES DEPARTMENT OF TREASURY; ROBERT F. KENNEDY, JR., *Secretary, U.S. Department of Health and Human Services, in his official capacity*; CHARLES EZELL, *in his official capacity as the Acting Director of the Office of Personnel Management*; SCOTT BESSENT, *Secretary, U.S. Department of Treasury, in his official capacity*; LORI CHAVEZ-DEREMER, *Acting Secretary, U.S. Department of Labor, in her official capacity*,

*Defendants-Appellants/Cross-Appellees.*

Under the fourth sentence of Fifth Circuit Rule 28.2.1, the States, as governmental entities, need not furnish a certificate of interested persons.

/s/ William F. Cole
WILLIAM F. COLE
*Counsel of Record for Amici Curiae*

i

# Table of Contents

Page

Certificate of Interested Persons .................................................................. i

Table of Authorities ................................................................................... iii

Introduction and Interest of Amici Curiae ............................................... 1

Argument .................................................................................................... 2

    I.   The APA Authorizes Vacatur of Unlawful Agency Actions. ...................... 2

        A.  Text, history, and precedent demonstrate that the APA's
            "set aside" language means vacatur. ..................................... 2

        B.  The federal government's interpretation of the APA is
            incorrect. .................................................................................... 8

    II.  Traditional Principles of Equity Do Not Require Vacatur To Be
       Party-Specific. ............................................................................... 11

        A.  Traditional principles of equity do not apply to vacatur, a
            mandatory legal remedy. ......................................................... 11

        B.  Even if vacatur were an equitable remedy, Congress can
            expand the judiciary's equitable powers by creating a
            nationwide remedy. ................................................................ 16

Conclusion ............................................................................................... 18

Certificate of Service ............................................................................... 20

Certificate of Compliance ....................................................................... 20

## Table of Authorities

Page(s)

**Cases:**

*Bd. of Govs. of Fed. Reserve Sys. v. Dimension Fin. Corp.*,
474 U.S. 361 (1986) ............................................................... 7

*Braidwood Mgmt., Inc. v. Becerra*,
104 F.4th 930 (5th Cir. 2024) ................................... 11, 12

*Cargill v. Garland*,
57 F.4th 447 (5th Cir. 2023) ....................................... 16

*Cent. & S. W. Servs., Inc. v. U.S. Env't Prot. Agency*,
220 F.3d 683 (5th Cir. 2000) ....................................... 15

*Chamber of Com. of U.S. v. U.S. Sec. & Exch. Comm'n*,
85 F.4th 760 (5th Cir. 2023) ....................................... 15

*Chamber of Com. of U.S. v. U.S. Sec. & Exch. Comm'n*,
88 F.4th 1115 (5th Cir. 2023) ................................. 14, 15

*Checkosky v. S.E.C.*,
23 F.3d 452 (D.C. Cir. 1994) ......................................... 3

*Corner Post, Inc. v. Bd. of Govs. of Fed. Reserve Sys.*,
603 U.S. 799 (2024) ............................................ 2, 3, 5, 8, 10

*Cream Wipt Food Prods. Co. v. Fed. Sec. Adm'r*,
187 F.2d 789 (3d Cir. 1951) ........................................... 4

*Data Mktg. P'Ship, LP v. U.S. Dep't of Lab.*,
45 F.4th 846 (5th Cir. 2022) ................................. 2, 7, 12

*Dep't of Homeland Sec. v. Regents of Univ. of Cal.*,
591 U.S. 1 (2020) ........................................................... 7

*DIRECTV, Inc. v. Budden*,
420 F.3d 521 (5th Cir. 2008) ......................................... 9

*Driftless Area Land Conservancy v. Valcq*,
16 F.4th 508 (7th Cir. 2021) ....................................... 14

*eBay Inc. v. MercExchange, L.L.C.*,
547 U.S. 388 (2006) ..................................................... 12

*FCC v. Consumers' Research*,
145 S. Ct. 2482 (2025) ................................................... 1

*Fischer v. United States*,
603 U.S. 480 (2024) ........................................................................ 6

*Fort Bend County v. U.S. Army Corps of Eng'rs*,
59 F.4th 180 (5th Cir. 2023) ......................................................... 4

*Franciscan All., Inc. v. Becerra*,
47 F.4th 368 (5th Cir. 2022) ....................................................... 12

*Garland v. Aleman Gonzalez*,
142 S. Ct. 2057 (2022) ............................................................... 14

*Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*,
527 U.S. 308 (1999) ....................................................................17

*Harmon v. Thornburgh*,
878 F.2d 484 (D.C. Cir. 1989) ...................................................... 7

*Hart v. Sansom*,
110 U.S. 151 (1884) ....................................................................13

*Kingdomware Techs., Inc. v. United States*,
579 U.S. 162 (2016) .................................................................... 12

*La Varre v. Hall*,
42 F.2d 65 (5th Cir. 1930) ..........................................................13

*Lujan v. Nat'l Wildlife Fed'n*,
497 U.S. 871 (1990) ...................................................................... 8

*Massachusetts v. Mellon*,
262 U.S. 447 (1923) .................................................................... 10

*McDonnell v. United States*,
579 U.S. 550 (2016) ...................................................................... 5

*Monsanto Co. v. Geertson Seed Farms*,
561 U.S. 139 (2010) .................................................................... 14

*Nat'l Broad. Co. v. United States*,
44 F. Supp. 688 (S.D.N.Y. 1942) .................................................. 3

*Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*,
145 F.3d 1399 (D.C. Cir. 1998) ..................................................... 8

*Nken v. Holder*,
556 U.S. 418 (2009) ....................................................................13

iv

*Norton v. S. Utah Wilderness All.*,
    542 U.S. 55 (2004) ................................................................ 5

*O.A. v. Trump*,
    404 F. Supp. 3d 109 (D.D.C. 2019) ..................................... 16

*Porter v. Warner Holding Co.*,
    328 U.S. 395 (1946) ............................................................ 17

*S.E.C. v. Stanford Int'l Bank, Ltd.*,
    112 F.4th 284 (5th Cir. 2024) ............................................. 13

*Sanderson Farms, Inc. v. Occupational Safety & Health Rev. Comm'n*,
    964 F.3d 418 (5th Cir. 2020) ............................................... 10

*Shawkee Mfg. Co. v. Hartford-Empire Co.*,
    322 U.S. 271 (1944) .............................................................. 3

*Texas v. Biden*,
    20 F.4th 928 (5th Cir. 2021) ...............................12, 13, 17

*Texas v. United States*,
    126 F.4th 392 (5th Cir. 2025) ............................................. 14

*Texas v. United States*,
    50 F.4th 498 (5th Cir. 2022) ............................................... 15

*Trump v. CASA, Inc.*,
    145 S. Ct. 2540 (2025) ................................................. 11, 14

*United States v. Balt. & Ohio R.R. Co.*,
    293 U.S. 454 (1935) .............................................................. 3

*United States v. L.A. Tucker Truck Lines, Inc.*,
    344 U.S. 33 (1952) ................................................................ 3

*United States v. Storer Broad. Co.*,
    351 U.S. 192 (1956) .............................................................. 4

*United States v. Williams*,
    553 U.S. 285 (2008) .............................................................. 5

*V.I. Tel. Corp. v. FCC*,
    444 F.3d 666 (D.C. Cir. 2006) ............................................. 7

*Weinberger v. Romero-Barcelo*,
    456 U.S. 305 (1982) ............................................................ 17

*Whitman v. Am. Trucking Assns., Inc.*,
  531 U.S. 457 (2001) ................................................................. 7

**Statutes:**

5 U.S.C.:
  § 702(2) ................................................................................11
  § 703 ...........................................................................  8, 9, 11
  § 705 ..................................................................................... 7
  § 706 ................................................................  4, 5, 11, 12, 15
  § 706(1) ....................................................................... 4, 5, 6
  § 706(2) ...............................................  4, 5, 6, 8, 9, 10, 15, 17
  § 706(2)(A) ........................................................................ 2

**Other Authorities:**

Antonin Scalia & Bryan Garner, Reading Law: The Interpretation of
  Legal Texts (2012) ............................................................. 5

Administrative Procedure Act, S. Doc. No. 79-248 (1946) ..................... 11

Black's Law Dictionary (11th ed. 2019) ............................................ 12, 13

Black's Law Dictionary (4th ed. 1951) ................................................. 3

Black's Law Dictionary (3d ed. 1933) ................................................. 3

Bouvier's Law Dictionary (W. Baldwin ed. 1926) ............................... 3

H.R. Rep. 79-1980 (1946) .............................................................. 11

1 Howard C. Joyce, *A Treatise On The Law Relating To Injunctions*
  § 1 (1909) ...........................................................................13

Jonathan H. Adler & Christopher J. Walker, *Delegation and Time*,
  105 Iowa L. Rev. 1931 (2020) ............................................... 1

Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*,
  104 Va. L. Rev. 933 (2018) ...........................................7, 9, 12

Mila Sohoni, *The Past and Future of Universal Vacatur*,
  133 Yale L. J. 2304 (2024) ................................................. 8, 11

Mila Sohoni, *The Power to Vacate a Rule*,
  88 Geo. Wash. L. Rev. 1121 (2020) .................................... 9

Nicholas Bagley, *Remedial Restraint in Administrative Law*,
  117 Colum. L. Rev. 253 (2017). ......................................... 3, 9

Ronald M. Levin & Mila Sohoni, *Universal Remedies, Section 706, and the APA*, Yale J. Reg. Bull. (July 19, 2020), https://tinyurl.com/337xyvmz .......................................................... 9

T. Elliot Gaiser, Mathura Sridharan & Nicholas Cordova, *The Truth of Erasure: Universal Remedies for Universal Agency Actions,* 8/28/2024 U. Chi. L. Rev. Online (2024) ......................................................... 4

U.S. Dep't of Justice, *Attorney General's Manual on the Administrative Procedure Act* (1947) ........................................................................ 10

# Introduction and Interest of Amici Curiae

The States of Texas, Alaska, Arkansas, Florida, Georgia, Idaho, Indiana, Iowa, Kansas, Louisiana, Missouri, Nebraska, North Dakota, South Carolina, and Tennessee respectfully submit this brief as amici curiae in support of neither party. Amici States take no position on the merits of Plaintiffs' claim under the Administrative Procedure Act, but they have a profound interest in the remedies available under the APA, a statute under which they litigate regularly. "Today, the 'vast majority' of the rules that govern our society are not made by Congress, but by Presidents or agencies they struggle to superintend." *FCC v. Consumers' Research*, 145 S. Ct. 2482, 2538 (2025) (Gorsuch, J., dissenting) (quoting Jonathan H. Adler & Christopher J. Walker, *Delegation and Time*, 105 Iowa L. Rev. 1931, 1975 (2020)). The APA is a critical tool used by Amici States to curb federal overreach and incursions into state sovereignty by executive-branch agencies.

The federal government's position in this case, first developed and pressed by the Biden Administration, *see* Brief for the Petitioners 40-44, *United States v. Texas*, No. 22-58 (U.S. Sept. 12, 2022), would drastically alter the scope of relief available under the APA and neuter its effectiveness. More importantly, its position is contrary to text, history, and precedent: When the federal government has violated the APA, the statute's plain text requires that those unlawful actions be "set aside"—a remedy that is distinct from injunctive relief, and one that is critical for correctly maintaining the balance of power between the states and the federal government. If the Court reaches the question of remedy under the APA, it should reaffirm that

vacatur for unlawful agency action continues to be the "default remedy" in this Circuit.

**ARGUMENT**

This Court's "default rule is that vacatur is the appropriate remedy" under the APA when an administrative agency has acted unlawfully. *Data Mktg. P'Ship, LP v. U.S. Dep't of Lab.*, 45 F.4th 846, 859 (5th Cir. 2022). That rule is comfortably grounded in the APA's text, structure, and history, along with precedent, as Justice Kavanaugh forcefully demonstrated just last year. *See Corner Post, Inc. v. Bd. of Govs. of Fed. Reserve Sys.*, 603 U.S. 799, 826-43 (2024) (Kavanaugh, J., concurring). The federal government offers no persuasive reason for the Court to reconsider its own precedent and upend settled practice in this Circuit.

## I.   The APA Authorizes Vacatur of Unlawful Agency Actions.

The APA provides that a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be" "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). This "set aside" language provides the textual hook for the APA's long-recognized vacatur remedy.

### A.   Text, history, and precedent demonstrate that the APA's "set aside" language means vacatur.

**1.** Courts have long relied on the "set aside" language to vacate unlawful agency actions. The APA's mandate in section 706(2)(A) that courts "set aside" unlawful agency action had a known meaning when Congress enacted the APA.

When Congress enacted the APA, "set aside" meant "to cancel, annul, or revoke." Black's Law Dictionary 1612 (3d ed. 1933); *see also* Black's Law Dictionary 1537 (4th ed. 1951) (same); Bouvier's Law Dictionary 1103 (W. Baldwin ed. 1926) ("To annul; to make void; as, to set aside an award"). The APA "reflected a consensus that judicial review of agency action should be modeled on appellate review of trial court judgments." Nicholas Bagley, *Remedial Restraint in Administrative Law*, 117 Colum. L. Rev. 253, 258 (2017). And "[a]t th[e] time [of the APA's enactment], it was common for an appellate court that reversed the decision of a lower court to direct that the lower court's 'judgment' be 'set aside,' meaning vacated." *Corner Post*, 603 U.S. at 829-30 (Kavanaugh, J., concurring) (citing *Shawkee Mfg. Co. v. Hartford-Empire Co.*, 322 U.S. 271, 274 (1944)); *see also United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38 (1952). "Setting aside means vacating; no other meaning is apparent." *Checkosky v. S.E.C.*, 23 F.3d 452, 491 (D.C. Cir. 1994) (opinion of Randolph, J.).

Moreover, "Congress used the phrase 'set aside' in many pre-APA statutes that plainly contemplated the vacatur of agency actions." *Corner Post*, 603 U.S. at 830 & n.2 (Kavanaugh, J., concurring) (collecting statutes). Likewise, in judicial decisions reviewing agency action before the APA's enactment "set aside" was used to mean vacate. *See, e.g.*, *United States v. Balt. & Ohio R.R. Co.*, 293 U.S. 454, 463-64 (1935) (stating that the lower court's order "setting aside" railroad regulation "renders it void"); *Nat'l Broad. Co. v. United States*, 44 F. Supp. 688, 690 (S.D.N.Y. 1942) (describing the actions at bar "to declare invalid and set aside certain regulations") (Hand, J.), *rev'd on other grounds*, 316 U.S. 447 (1942). And even the Executive

Branch historically shared this understanding. *See* T. Elliot Gaiser, Mathura Sridharan & Nicholas Cordova, *The Truth of Erasure: Universal Remedies for Universal Agency Actions,* 8/28/2024 U. Chi. L. Rev. Online 4 (2024).

In the years immediately following Congress's enactment of the APA, courts understood it to authorize vacatur of agency action. Just five years after the APA's enactment, the Third Circuit explained that section 706(2) "affirmatively provides for vacation of agency action." *Cream Wipt Food Prods. Co. v. Fed. Sec. Adm'r*, 187 F.2d 789, 790 (3d Cir. 1951). And in 1956 the Supreme Court reversed a D.C. Circuit decision holding portions of an FCC rule invalid and ordering offending provisions to be "struck out" after the challenger had asked the court to "vacate the [unlawful] provisions of the . . . Rules." *United States v. Storer Broad. Co.*, 351 U.S. 192, 200 (1956). And although the Court ultimately upheld the regulations as lawful, it did not criticize the relief the D.C. Circuit ordered or otherwise question its power to vacate unlawful rules. *See id.*

2. In addition to text, statutory context shows that vacatur under section 706 is appropriate under the APA.

The structure of section 706 demonstrates that the phrase "set aside" refers to a form of relief that courts enter against unlawful agency actions. Section 706(2) complements section 706(1), which directs courts to "compel" agency action that is "unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Together these two subparts list acts that a "reviewing court shall" take in response to unlawful agency action, including, in the case of section 706(1), an agency's unlawful failure to act. *See Fort Bend County v. U.S. Army Corps of Eng'rs*, 59 F.4th 180, 197 (5th Cir.

2023) (describing "[a] court's authority to compel agency action [under section 706(1)]" in "instances where an agency ignored a 'specific, unequivocal command' in a federal statute or binding regulation") (quoting *Norton v. S. Utah Wilderness All.* (*SUWA*), 542 U.S. 55, 63 (2004)).

Section 706(1) therefore unambiguously creates a remedy against agency inaction. *See Corner Post*, 603 U.S. at 839 (Kavanaugh, J., concurring) (stating "§ 706(1), which authorizes courts to 'compel agency action unlawfully withheld or unreasonably delayed,' [is] unmistakably a remedy"). A majority of the Supreme Court has described section 706(1) as providing "relief for a failure to act." *SUWA*, 542 U.S. at 62. After reasoning that section 706(1) "carried forward the traditional practice . . . of mandamus under the All Writs Act," *id.* at 63, the Supreme Court concluded that section 706(1) authorizes the same relief as mandamus, with similar limitations, *id.* at 63-65. And reading 706(1) as providing a remedy accords with the plain meaning of "compel."

Because "a word is known by the company it keeps," section 706(1)'s authorization of a remedy shows that section 706(2), its neighboring subpart, likewise authorizes a remedy. *McDonnell v. United States*, 579 U.S. 550, 568-69 (2016) (explaining the *noscitur a sociis* canon of construction). Related language is "given more precise content by the neighboring words with which it is associated." *United States v. Williams*, 553 U.S. 285, 294 (2008). "Although most associated-words cases involve listings, . . . a listing is not prerequisite. An 'association' is all that is required." Antonin Scalia & Bryan Garner, Reading Law: The Interpretation of Legal Texts 197 (2012). The case for applying *noscitur a sociis* is strongest where—as in section 706—

two subparts fill out the content of a single statutory sentence. *See*, *e.g.*, *Fischer v. United States*, 603 U.S. 480, 486-91 (2024) (applying *noscitur a sociis* to same-sentence subparts).

Accordingly, "set aside" can be "given a more focused meaning by the terms linked to it." *Id.* at 488. Because sections 706(1) and 706(2) are two sides of the same coin, section 706(2) should be construed to authorize the same type of judicial act as section 706(1). And since section 706(1) empowers courts to grant relief for unlawful agency *nonaction*, section 706(2), likewise, must empower courts to award relief in response to unlawful agency *action*. "Set aside" in section 706(2) thus complements "compel" in section 706(1) as the type of relief appropriate to redress different categories of agency wrongdoing.

Once section 706(2) is understood as a remedy clause, "set aside" necessarily requires vacatur. To grant relief under section 706(1), a court issues an order against agency officials. That is because *compelling* agency action requires compelling an agency official responsible for that action. But section 706(2) lists "agency action, findings, and conclusions" as the objects of "set aside." The plain meaning of "set aside," then, is a judicial act that operates directly on agency action, not an act that operates on agency personnel. As a remedy that operates directly on agency decisions, "setting aside" must deprive those decisions of binding effect. An agency action that is not nullified continues to burden litigants and constitutes an ongoing excess of agency authority. Accordingly, to provide effective redress, a remedy that operates on a rule or other action nullifies it. Section 706(2) creates such a remedy and therefore instructs courts to vacate unlawful agency action.

Other statutory provisions confirm the established construction of "set aside." For example, the APA allows a court to "postpone the effective date of an agency action" during litigation. 5 U.S.C. § 705. That interim remedy prevents an agency rule from acquiring binding legal effect anywhere in the nation because it operates against a challenged action itself. Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 Va. L. Rev. 933, 950 (2018).Vacatur is therefore consistent with the scope of relief that the APA authorizes while review is pending, since vacating an unlawful rule is functionally a permanent counterpart to postponing its effect.

3.    Precedent supports vacatur, too. For more than thirty years, vacatur has been "the ordinary result" when the D.C. Circuit "determines that agency regulations are unlawful." *Harmon v. Thornburgh*, 878 F.2d 484, 495 n.21 (D.C. Cir. 1989); *see also V.I. Tel. Corp. v. FCC*, 444 F.3d 666, 671 (D.C. Cir. 2006) ("'Set aside' usually means 'vacate.'"). And as noted, in this Circuit vacatur is the "default rule." *Data Mktg. P'ship*, 45 F.4th at 859.

The Supreme Court has often affirmed lower-court decisions vacating administrative action, too. *See, e.g.*, *Dep't of Homeland Sec. v. Regents of Univ. of Cal.*, 591 U.S. 1, 36 & n. 7 (2020); *Whitman v. Am. Trucking Assns., Inc.*, 531 U.S. 457, 486 (2001); *Bd. of Govs. of Fed. Reserve Sys. v. Dimension Fin. Corp.*, 474 U.S. 361, 364-365 (1986). In *Regents*, the Court concluded that its "affirmance of the [] order vacating the recission makes it unnecessary to examine the propriety of the nationwide scope of the injunctions issued by the District Courts," 591 U.S. at 36 n.7, both recognizing the nationwide scope of vacatur and declining to require equitable considerations like party-specific tailoring.

The federal government's contrary argument that vacatur is not available under the APA also clashes with *Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990). *See generally Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998). *Lujan*'s five-Justice majority observed that an "entire" agency program is "affected" by a successful "challenge[] under the APA." *Id.* at 890 n.2. Similarly, *Lujan*'s four-Justice dissent explained that when a "plaintiff prevails" in APA litigation, "the result is that the rule is invalidated, not simply that the court forbids its application to a particular individual." 497 U.S. at 913 (Blackmun, J., dissenting).

The federal government cites no case adopting its interpretation, which is contrary to this abundance of authority.

## B.   The federal government's interpretation of the APA is incorrect.

The federal government attempts to justify its countervailing interpretation of the APA in several ways, but none has merit.

*First*, the federal government contends that section 706(2) is merely a rule of decision (and thus does not authorize vacatur) because section 703 exclusively governs remedies. *See* ECF 215 at 36-39; ECF 298 at 36-40. Section 703 states that a plaintiff may bring "any applicable form of legal action, including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus." 5 U.S.C. § 703. "But 'no court has ever held that Section 703 implicitly delimits the kinds of remedies available in an APA suit.'" *Corner Post*, 603 U.S. at 838-39 (Kavanaugh, J.) (quoting Mila Sohoni, *The Past and Future of Universal Vacatur*, 133 Yale L. J. 2304, 2337 (2024)). In fact, "[i]n the 70-plus years since the APA was enacted, administrative lawyers have never construed Section 703 as addressing remedies."

Ronald M. Levin & Mila Sohoni, *Universal Remedies, Section 706, and the APA*, Yale J. Reg. Bull. (July 19, 2020), https://tinyurl.com/337xyvmz.

Nor would it make sense that a section of the APA governing the "[f]orm and venue of proceeding," 5 U.S.C. § 703, would impose limitations on the *remedies* available. And sure enough, nowhere in section 703 did Congress instruct courts how to fashion relief for a successful APA challenge. The text does not include "remedy," "form of relief," or any similar term. Instead, it authorizes challengers to initiate suit by "any applicable form of legal action." And even if that list could somehow be read as addressing remedies, its list of the allowable forms of proceeding follows an open-ended "including," implying a non-exhaustive list. *See DIRECTV, Inc. v. Budden*, 420 F.3d 521, 528 (5th Cir. 2008).

*Second*, the federal government errs in arguing that section 706(2)'s "set aside" language refers to a court's authority to simply "disregard [] unlawful action" by incorrectly analogizing that action to the "way a court would set aside and disregard an unconstitutional statute." ECF 215 at 38; *see also* ECF 298 at 36. Contrary to what the federal government argues, "the [APA] establishes a unique form of judicial review that differs from judicial review of statutes." Mitchell, *supra*, at 950. Courts' review of agency action is "modeled on appellate review of trial court judgments." Bagley, *supra*, at 258. Put another way, "a court that has 'set aside' agency action has formally vetoed the agency's work in the same way that a President vetoes a bill." Mila Sohoni, *The Power to Vacate a Rule*, 88 Geo. Wash. L. Rev. 1121, 1191-92 (2020). If a later court "fails to give effect to this judicial veto," it has launched an impermissible collateral attack on the earlier court's judgment. *Id.*

9

The federal government's interpretation would also make section 706(2)'s "hold unlawful" command superfluous. *See Sanderson Farms, Inc. v. Occupational Safety & Health Rev. Comm'n*, 964 F.3d 418, 425 (5th Cir. 2020) ("Interpretations of statutes and regulations that avoid surplusage are favored."). Congress would not have required courts to "hold unlawful *and* set aside" unlawful agency action if courts could "set aside" a rule by merely deeming it unlawful. 5 U.S.C. § 706(2) (emphasis added). As the federal government points out, in the context of judicial review of legislation the "negative power to disregard an unconstitutional enactment" is part and parcel of the courts' authority to determine the constitutionality of "the law applicable to" a case or controversy. *Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923). The federal government's interpretation of "set aside" renders it mere surplusage.

*Third*, the federal government tries to bolster its position by pointing to legislative history that describes the APA as "constitut[ing] a general restatement of the principles of judicial review" existing at the time of its enactment. ECF 215 at 37 (quoting U.S. Dep't of Justice, *Attorney General's Manual on the Administrative Procedure Act* 93 (1947)); *see also* ECF 298 at 38 (same). But this hardly suggests that Congress did not intend to authorize vacatur; after all, "vacatur was not a new remedy" when Congress enacted the APA. *Corner Post*, 603 U.S. at 840 (Kavanaugh, J., concurring); *see also supra* at 2-4.

Regardless, the federal government offers an incomplete picture of the APA's legislative history. *See* ECF 215 at 36-37; ECF 298 at 38-39. To support its atextual position, it cites a Senate Committee Report, which paraphrases Section 706 as

involving the "review and invalidation of agency action." Administrative Procedure Act, S. Doc. No. 79-248, at 40 (1946). But to the extent that the report also describes Section 703 as having a bearing on remedies under the APA—which, it does not—the report does not venture close to suggesting that Section 703 is the *exclusive* mechanism governing relief. The federal government's contention that section 703 is the APA's exclusive source of remedies is also undermined by the House Judiciary Committee's Report on the APA, which states that "[u]nder [section 10(b), now 5 U.S.C. § 703] *and the other provisions of section 10* a proper reviewing court has full authority to render decision *and grant relief*." *See* Sohoni, *supra* at 2337 (quoting H.R. Rep. 79-1980 (1946)).

## II.  Traditional Principles of Equity Do Not Require Vacatur To Be Party-Specific.

Short of finding that vacatur is not authorized by the APA, the federal government alternatively urges the Court to analogize section 702(2) to injunctive relief, *Trump v. CASA, Inc.*, 145 S. Ct. 2540 (2025), and to limit vacatur to the parties. But the federal government is wrong to assume that "vacatur . . . is an equitable remedy" and that federal equity jurisprudence requires vacatur to be "subject to ordinary equitable principles," including party-specificity and equitable balancing. ECF 215 at 39-41; ECF 298 at 40-45.

### A.  Traditional principles of equity do not apply to vacatur, a mandatory legal remedy.

This Court does "not understand vacatur to be a remedy familiar to courts sitting in equity." *Braidwood Mgmt., Inc. v. Becerra*, 104 F.4th 930, 951 (5th Cir. 2024),

*rev'd and remanded on other grounds sub nom. Kennedy v. Braidwood Mgmt., Inc.*, 145 S. Ct. 2427 (2025) (citation omitted). The federal government's counterarguments lack merit.

1.  Equitable relief is discretionary. *See, e.g.*, *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 394 (2006) (vacating injunction issued without equitable balancing on the grounds that injunctions cannot automatically issue but rely on "equitable discretion"). But section 706 uses the mandatory "shall" and therefore makes "vacatur [] the only statutorily prescribed remedy for a successful APA challenge." *Franciscan All., Inc. v. Becerra*, 47 F.4th 368, 374-75 (5th Cir. 2022); *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 171 (2016) ("[T]he word 'shall' usually connotes a requirement"). That is why this Court has consistently held that vacatur is the "default rule," *Data Mktg. P'ship*, 45 F.4th at 859, and has rejected the need to balance "the various equities at stake before determining whether a party is entitled to vacatur," *Braidwood*, 104 F.4th at 952.

The nature of vacatur confirms that this Court's vacatur precedent is correct. Vacatur "operates on the status of agency action," *id.* at 951, rendering the challenged action "void," *Texas v. Biden*, 20 F.4th 928, 957 (5th Cir. 2021) (citing Mitchell, *supra* at 1014-16), *rev'd on other grounds*, 597 U.S. 785 (2022). So unlike an injunction, vacatur does not "requir[e a party] to do or refrain from doing a particular thing." *Vacatur*, Black's Law Dictionary 937 (11th ed. 2019). Vacatur instead operates against a challenged action and is self-executing. It operates "in the same way that an appellate court formally revokes an erroneous trial-court judgment," Mitchell, *supra*, at 1012—akin to how this Court's grant of en banc review vacates a panel

opinion for all litigants, not merely the parties to the case, *see* 5th Cir. R. 41.3 ("Unless otherwise expressly provided, the granting of a rehearing en banc vacates the panel opinion and judgment of the court[.]").

By contrast, an injunction operates directly on agency personnel rather than on the agency action itself: "[i]t is a fundamental maxim that equity acts in personam." *La Varre v. Hall*, 42 F.2d 65, 67 (5th Cir. 1930); *see also S.E.C. v. Stanford Int'l Bank, Ltd.*, 112 F.4th 284, 292-94 (5th Cir. 2024). Indeed, prior to the merger of the courts of law and equity, the *in personam* character of equity courts prevented them from vacating or annulling legal title to property—the exact resolution that vacatur provides against unlawful agency action. *See, e.g.*, *Hart v. Sansom*, 110 U.S. 151, 155 (1884) (stating "a court of equity acts *in personam* . . . [and] has no inherent power, by the mere force of its decree, to annul a deed or establish a title."). This limitation explains why injunctive relief only binds the parties before the court. *See Nken v. Holder*, 556 U.S. 418, 428 (2009) ("[A]n injunction is a judicial process or mandate operating *in personam* . . . . [T]he order is directed at someone, and governs that party's conduct." (quotation omitted)); *Injunction*, Black's Law Dictionary 937 (11th ed. 2019) (quoting 1 Howard C. Joyce, *A Treatise On The Law Relating To Injunctions* § 1, at 2-3 (1909)) ("[A]n injunction is a judicial process or mandate operating in personam by which, upon certain established principles of equity, a party is required to do or refrain from doing a particular thing.").

The action-directed quality of vacatur differentiates that remedy from the party-centric remedies available in equity. By the same token, vacatur operates retroactively, "undo[ing] or expung[ing] a past agency action," *Biden*, 20 F.4th at 957

(quoting *Driftless Area Land Conservancy v. Valcq*, 16 F.4th 508, 522 (7th Cir. 2021)), whereas equitable remedies are prospective, *Garland v. Aleman Gonzalez*, 142 S. Ct. 2057, 2065 (2022). Vacatur thus lacks the hallmarks of equitable relief and is not an equitable remedy. *Cf. Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010) (referring to vacatur as a "less drastic remedy" than injunctive relief).

2.    The federal government's invocation of equitable balancing and the complete-relief principle, ECF 215 at 39-41; ECF 298 at 40-45, does nothing to overcome these points for the simple reason that those features of equity do not apply to a non-equitable remedy like vacatur. Accordingly, *CASA* offers no basis to limit vacatur to the parties because that decision simply reaffirmed that complete relief between the parties is the limit of the judiciary's *equitable* powers. 145 S. Ct. at 2550-51. But as already explained, because courts do not invoke their equitable powers when setting aside agency action under the APA, there is no reason why vacatur should be subject to any of the considerations that normally guide equity.

Nor does the limited availability of remand without vacatur compromise vacatur's non-equitable character. *See* ECF 215 at 53-54. Remand without vacatur "is justifiable only in 'rare cases'" where there is "a serious possibility that the agency will be able to correct the rule's defects on remand." *Chamber of Com. of U.S. v. U.S. Sec. & Exch. Comm'n*, 88 F.4th 1115, 1118 (5th Cir. 2023). Unless defective agency action can be cured, courts must order vacatur. *See id.* (stating that "[r]emand without vacatur is therefore inappropriate for agency action suffering from one or more serious procedural or substantive deficiencies."); *Texas v. United States*, 126 F.4th 392, 418 (5th Cir. 2025).

Indeed, where defects are "fundamental" and "substantive" such that cure on remand is improbable, vacatur is the only appropriate remedy. *Texas v. United States*, 50 F.4th 498, 529 (5th Cir. 2022). Only when "there [is] at least a serious probability" that an agency defendant "would be able to [correct] its decision if given an opportunity to do so" does the APA permit "limited time to remedy the deficiencies in the rule by remand[]." *Chamber of Com.*, 88 F.4th at 1118 (quoting *Chamber of Com. of U.S. v. U.S. Sec. & Exch. Comm'n*, 85 F.4th 760, 780 (5th Cir. 2023) (merits panel opinion)) (quotation marks omitted). Accordingly, in *Chamber of Commerce*, a panel of this Court vacated an agency rulemaking after initially remanding without vacatur because the agency failed to substantiate the rule on remand. *Id.*

Contrary to these settled principles, the federal government would have the exception become the norm. *See* ECF 215 at 42–43. But recognizing vacatur as the default rule honors the mandatory character of section 706(2). The federal government relies on *Chamber of Commerce*, but that decision confirms that vacatur flows directly from the text of section 706, not from equitable balancing, and that remand without vacatur is an exceptional departure permitted only in narrow circumstances where agency defendants can change an unlawful action into a lawful one. 88 F.4th at 1118; *see also Cent. & S. W. Servs., Inc. v. U.S. Env't Prot. Agency*, 220 F.3d 683, 695 (5th Cir. 2000) (granting remand without vacatur after finding that further study would likely allow EPA to substantiate its rule and proposing to "reconsider the Final Rule in light of [the EPA's] study"). The federal government's citation to *Cargill v. Garland* is also inapt, *see* ECF 215 at 54, because that decision did not address remand without vacatur and remanded without entering relief because the "the parties

15

[did] not brief[] the remedial-scope question," 57 F.4th 447, 472 (5th Cir. 2023) (en banc). Regardless, *Cargill* leaves no doubt that "vacatur of an agency action is the default rule in this Circuit." *Id.* The fact that this Court occasionally orders remand without vacatur in narrow circumstances does not render vacatur discretionary or equitable.

*   *   *

The federal government's atextual argument ultimately raises unanswerable questions. "[H]ow could this Court vacate the Rule with respect to the . . . plaintiffs in this case without vacating the Rule writ large? What would it mean to 'vacate' a rule as to some but not other members of the public?" *O.A. v. Trump*, 404 F. Supp. 3d 109, 153 (D.D.C. 2019).

Like revocation of a court order, judicial annulment of agency action may alter a party's conduct, but it does not order anyone to do anything. Nationwide vacatur is therefore the only possibility. Fundamentally, the federal government's proposal to turn vacatur into a party-specific remedy is inconsistent with the nature of that remedy. Because vacatur runs against agency action, courts cannot modify a vacatur order so that it affects only prevailing plaintiffs. "Universal vacatur" is a misnomer, because vacatur applies against one thing—the challenged agency action—which, if vacated, cannot apply to anyone.

## B. Even if vacatur were an equitable remedy, Congress can expand the judiciary's equitable powers by creating a nationwide remedy.

Even if vacatur were an equitable remedy, that would not help the federal government because Congress can choose to dispense with equity's usual constraints.

*Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 333 (1999); *see also id.* at 329 (noting the Court's "traditionally cautious approach to equitable powers, which leaves any substantial expansion of past practice to Congress"). "Of course, Congress may intervene and guide or control the exercise of the courts' discretion" through "a clear and valid legislative command." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982) (citing *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946)). Thus, regardless whether vacatur is equitable, its scope and availability are determined by the APA, which makes the remedy mandatory and operative on the action itself, not discretionary and limited to the parties in the case. *See supra* at 2-8, 12-13.

The federal government's arguments for limiting vacatur rely on a rigid application of general equitable principles, whereas this Circuit's doctrine that vacatur is a default remedy is rooted in the text, history, and tradition of the APA. The federal government offers little reason for this Court to second guess its precedent that section 706(2) "empowers and commands courts to set aside unlawful agency actions." *Biden*, 20 F.4th at 957.

## Conclusion

If the Court reaches the question of the APA's remedies, it should hold that vacatur remains the default remedy in this Circuit.

Respectfully submitted.

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

William R. Peterson
Solicitor General

/s/ William F. Cole
William F. Cole
Principal Deputy Solicitor General
William.Cole @oag.texas.gov

Christina Cella
Special Counsel

Kyle S. Tebo
Special Counsel

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Counsel for Amici States

*Additional Counsel:*

STEPHEN J. COX
Attorney General of Alaska

TIM GRIFFIN
Attorney General of Arkansas

JAMES UTHMEIER
Attorney General of Florida

CHRISTOPHER CARR
Attorney General of Georgia

RAÚL LABRADOR
Attorney General of Idaho

THEODORE E. ROKITA
Attorney General of Indiana

BRENNA BIRD
Attorney General of Iowa

KRIS KOBACH
Attorney General of Kansas

LIZ MURRILL
Attorney General of Louisiana

CATHERINE L. HANAWAY
Attorney General of Missouri

MICHAEL T. HILGERS
Attorney General of Nebraska

DREW H. WRIGLEY
Attorney General of North Dakota

ALAN WILSON
Attorney General of South Carolina

JONATHAN SKRMETTI
Attorney General of Tennessee

## CERTIFICATE OF SERVICE

On September 9, 2025, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ William F. Cole
WILLIAM F. COLE

## CERTIFICATE OF COMPLIANCE

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 29(a)(5) because it contains 4,719 words, excluding the parts of the brief exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ William F. Cole
WILLIAM F. COLE