

SIDLEY AUSTIN LLP
1501 K STREET, N.W.
WASHINGTON, DC 20005
+1 202 736 8000

AMERICA  •  ASIA PACIFIC  •  EUROPE

+1 202 736 8018
JSTONECIPHER@SIDLEY.COM

April 14, 2026

**By CM/ECF**

Lyle W. Cayce
Clerk of Court
U.S. Court of Appeals
For the Fifth Circuit
600 S. Maestri Place, Suite 115
New Orleans, LA 70130

      Re:    Case No. 23-40605, *Tex. Med. Ass'n v. HHS*

Dear Mr. Cayce:

Pursuant to Rule 28(j), I write to inform the Court that on April 1, 2026, the Departments of Health & Human Services, Labor, and the Treasury announced that they are extending their exercise of enforcement discretion under the No Surprises Act for insurers that use a qualifying payment amount (QPA) calculated in accordance with the July 2021 rule at issue in this case. *See FAQ About Consolidated Appropriations Act, 2021 Implementation Part 73* at 3, cms.gov/files/document/faqs-part-73.pdf. The extension of enforcement discretion applies to all items and services furnished before October 1, 2026. *Id.*

This development reaffirms that the district court acted well within its broad remedial discretion in vacating the challenged rules. While the Departments have claimed that vacatur would "leave health plans scrambling to engage in costly new rounds of [QPA] calculations," En Banc Br. 48, the district court rightly predicted that the Departments could prevent any such disruption through a temporary exercise of enforcement discretion, ROA.13236. The Departments did just that in the months following the district court's decision and have continued to do so while this appeal has been pending. *See* TMA En Banc Br. 19. The Departments' latest extension of their enforcement discretion continues to show that vacatur has not caused and will not cause the disruption the Departments claim. The Court should affirm.

# SIDLEY

Lyle W. Cayce
April 14, 2026
Page 2

Respectfully submitted,

/s/ *Jillian Sheridan Stonecipher*

Jillian Sheridan Stonecipher
Sidley Austin LLP
1501 K Street, NW
Washington, D.C. 20005
(202) 736-8148
jstonecipher@sidley.com

*Counsel for Appellees*

cc: All counsel of record by CM/ECF

Attachment: *FAQ About Consolidated Appropriations Act, 2021 Implementation Part 73*

# Attachment

# FAQ ABOUT CONSOLIDATED APPROPRIATIONS ACT, 2021 IMPLEMENTATION PART 73

April 1, 2026

Set out below is a Frequently Asked Question (FAQ) regarding implementation of certain provisions of Title I (the No Surprises Act)[1] of division BB of the Consolidated Appropriations Act, 2021. This FAQ has been prepared jointly by the Departments of Labor, Health and Human Services (HHS), and the Treasury (collectively, the Departments), along with the Office of Personnel Management (OPM). Like previously issued FAQs (available at https://www.dol.gov/agencies/ebsa/about-ebsa/our-activities/resource-center/faqs and https://www.cms.gov/marketplace/resources/fact-sheets-faqs), this FAQ answers a question from stakeholders to help people understand the law and promote compliance.

**The No Surprises Act**

Sections 102 and 103 of the No Surprises Act added section 9816 to the Internal Revenue Code (Code), section 716 to the Employee Retirement Income Security Act (ERISA), and section 2799A-1 to the Public Health Service (PHS) Act. Section 104 of the No Surprises Act added sections 2799B-1 and 2799B-2 to the PHS Act. Section 105 of the No Surprises Act added section 9817 to the Code, section 717 to ERISA, and sections 2799A-2 and 2799B-5 to the PHS Act. These provisions provide protections against surprise medical bills for participants, beneficiaries, and enrollees in a group health plan or group or individual health insurance coverage offered by a health insurance issuer with respect to certain out-of-network services that are subject to the No Surprises Act.

The Departments and OPM[2] issued interim final rules (July 2021 interim final rules[3] and October 2021 interim final rules[4]), and the Departments issued final rules (August 2022 final rules[5]) implementing provisions of Code sections 9816 and 9817, ERISA sections 716 and 717, and PHS Act sections 2799A-1 and 2799A-2. Pursuant to Code section 9816(c)(2)(A), ERISA section 716(c)(2)(A), and PHS Act section 2799A-1(c)(2)(A), the Departments also established a Federal Independent Dispute Resolution (IDR) process for resolving disputes between plans or issuers and providers, facilities, or providers of air ambulance services about the out-of-network rate for items or services subject to the No Surprises Act in cases where a specified State law or an applicable All-Payer Model Agreement does not provide a method for determining the out-of-network rate, and the parties do not agree to an out-of-network rate through open negotiation. The Departments have also previously issued guidance on various No Surprises Act

---

[1] Pub. L. 116-260, 134 Stat. 1182 (2020).
[2] No Surprises Act section 102(d)(1) added 5 U.S.C. 8902(p) to require that Federal Employees Health Benefits Program (FEHB) carriers provide these protections to their enrollees. OPM regulations are set forth at 5 CFR 890.114. For purposes of this document, the term "plans and issuers" includes FEHB carriers to the extent consistent with 5 CFR 890.114.
[3] 86 FR 36872 (July 13, 2021).
[4] 86 FR 55980 (Oct. 7, 2021).
[5] 87 FR 52618 (Aug. 26, 2022).

implementation issues, including FAQs about Affordable Care Act and Consolidated Appropriations Act, 2021 Implementation Part 55.[6]

*TMA III and Related Guidance: Calculation of Qualifying Payment Amounts (QPAs)*

On August 24, 2023, the United States District Court for the Eastern District of Texas (district court) issued an opinion and order in *Texas Medical Ass'n v. United States Department of Health & Human Services* (*TMA III*), vacating certain provisions of the July 2021 interim final rules as well as certain portions of several No Surprises Act guidance documents issued by the Departments. The district court in *TMA III* held that several provisions of the regulations and guidance are unlawful and vacated and remanded them for further consideration, including provisions related to the methodology for calculating the QPA.[7] The Department of Justice partially appealed the district court's decision in *TMA III* to the United States Court of Appeals for the Fifth Circuit (Fifth Circuit).

On October 30, 2024, the Fifth Circuit issued an opinion and order in *TMA III*.[8] The Fifth Circuit reversed the district court's vacatur of certain challenged provisions related to the QPA methodology, including the inclusion of contracted rates for items and services "regardless of the number of claims paid at that contracted rate"; the exclusion of single case agreements; and the exclusion of bonus, incentive, and risk-sharing payments.[9] The Fifth Circuit affirmed the district court's vacatur of certain deadline provisions[10] and the district court's holding as to the requirements regarding disclosure of information about the QPA.[11]

On May 30, 2025, the Fifth Circuit granted plaintiffs' petition for rehearing *en banc* and vacated the Fifth Circuit's October 30, 2024 panel opinion.[12] As a result, the August 24, 2023 district court decision continues to bind the Departments pending the Fifth Circuit's *en banc* decision.

---

[6] *See* FAQs about Affordable Care Act and Consolidated Appropriations Act, 2021 Implementation Part 55 (Aug. 19, 2022), available at https://www.dol.gov/agencies/ebsa/about-ebsa/our-activities/resource-center/faqs/aca-part-55 and https://www.cms.gov/files/document/faqs-part-55.pdf.

[7] *See Tex. Med. Ass'n v. U.S. Dep't of Health & Hum. Servs.*, No. 6:22-cv-450-JDK (E.D. Tex. Aug. 24, 2023) (unpublished).

[8] *Tex. Med. Ass'n v. U.S. Dep't of Health & Hum. Servs.*, 120 F.4th 494 (5th Cir. 2024).

[9] The Fifth Circuit reversed the vacatur of 86 FR 36872, 36889 (Jul. 13, 2021) (the phrase "regardless of the number of claims paid at that contracted rate"); 26 CFR 54.9816-6T(a)(1), 29 CFR 2590.716-6(a)(1), and 45 CFR 149.140(a)(1) (from "Solely for purposes of this definition a single case agreement" to "or enrollee in unique circumstances, does not constitute a contract"); and 26 CFR 54.9816-6T(b)(2)(iv), 29 CFR 2590.716-6(b)(2)(iv), and 45 CFR 149.140(b)(2)(iv); and 5 CFR 890.114(a), insofar as it requires compliance with the foregoing provisions.

[10] The Fifth Circuit affirmed the vacatur of 26 CFR 54.9817-1T(b)(4)(i), 29 CFR 2590.717-1(b)(4)(i), and 45 CFR 149.130(b)(4)(i) (from "For purposes of this paragraph (b)(4)(i), the 30-calendar-day period begins" to "decide a claim for payment for the services"). The Departments reiterate the guidance contained in FAQs Part 62, Q5, which states that the Departments and OPM expect plans and issuers to make reasonable efforts to determine coverage and provide initial payments or notices of denial of payment where applicable under the plan or coverage within the 30-calendar-day timeframe, and also reiterates existing requirements under the ERISA claims procedure regulation and the Affordable Care Act internal claims and appeals regulation.

[11] The Fifth Circuit affirmed the QPA disclosure requirements at 26 CFR 54.9816-6T(d), 29 CFR 2590.716-6(d), and 45 CFR 149.140(d).

[12] *Tex. Med. Ass'n v. U.S. Dep't of Health & Hum. Servs.*, Case No. 23-40605 (5th Cir. May 30, 2025).

The Fifth Circuit has not released an *en banc* decision in *TMA III* as of the date of publication of this document.

The Departments and OPM have issued several sets of FAQs in response to *TMA III*. Most recently, on July 30, 2025, the Departments and OPM issued FAQs Part 71,[13] which extended earlier exercises of enforcement discretion with respect to QPAs calculated in accordance with the methodology under the July 2021 interim final rules and guidance in effect immediately before the district court's decision in *TMA III* (the 2021 methodology). The exercise of enforcement discretion in FAQs Part 71 applied for items and services furnished before February 1, 2026.

**Q: Are the Departments and OPM extending the enforcement relief regarding the use of QPAs announced in FAQs Part 71?**

Yes. The Departments and OPM are extending the exercise of enforcement discretion, originally provided in FAQs Part 62 and extended in FAQs Parts 67, 69, and 71, under the relevant No Surprises Act provisions for any plan or issuer, or party to a payment dispute in the Federal IDR process, that uses a QPA calculated in accordance with the 2021 methodology, for items and services furnished on or after February 1, 2026, and before October 1, 2026, the first day of the calendar month that begins after 6 months from the issuance of these FAQs. This exercise of enforcement discretion applies to QPAs for purposes of calculating patient cost sharing, providing required disclosures with an initial payment or notice of denial of payment,[14] and providing required disclosures and submissions under the Federal IDR process.

HHS similarly is extending its exercise of enforcement discretion under the relevant No Surprises Act provisions for a provider, facility, or provider of air ambulance services that bills, or holds liable, a participant, beneficiary, or enrollee for a cost-sharing amount based on a QPA calculated in accordance with the 2021 methodology, for items and services furnished on or after February 1, 2026, and before October 1, 2026.

---

[13] FAQs about Consolidated Appropriations Act, 2021 and Affordable Care Act Implementation Part 71 (July 30, 2025), available at https://www.dol.gov/sites/dolgov/files/ebsa/about-ebsa/our-activities/resource-center/faqs/aca-part-71.pdf and https://www.cms.gov/files/document/faqs-part-71.pdf (FAQs Part 71).

[13] *See* FAQs about Affordable Care Act and Consolidated Appropriations Act, 2021 Implementation Part 62 (Oct. 6, 2023), available at https://www.dol.gov/agencies/ebsa/about-ebsa/our-activities/resource-center/faqs/aca-part-62 and https://www.cms.gov/files/document/faqs-part-62.pdf (FAQs Part 62); FAQs about Affordable Care Act and Consolidated Appropriations Act, 2021 Implementation Part 67 (May 1, 2024), available at https://www.dol.gov/agencies/ebsa/about-ebsa/our-activities/resource-center/faqs/aca-part-67 and https://www.cms.gov/files/document/faqs-part-67.pdf (FAQs Part 67); FAQs about Consolidated Appropriations Act, 2021 Implementation Part 69 (Jan. 14, 2025), available at https://www.dol.gov/agencies/ebsa/about-ebsa/our-activities/resource-center/faqs/aca-part-69 and https://www.cms.gov/files/document/faqs-part-69.pdf (FAQs Part 69).

[14] Consistent with FAQs Part 71, Q2, this exercise of enforcement discretion includes QPA disclosures provided with an initial payment or notice of denial of payment where a plan or issuer that uses the 2021 methodology certifies that a QPA was determined in compliance with 29 CFR 2590.716-6 and 45 CFR 149.140, as applicable, provided that the plan or issuer, in a timely manner upon request of the provider, facility, or provider of air ambulance services, discloses that it is using a QPA calculated in accordance with the 2021 methodology.

HHS encourages States that are the primary enforcers of the relevant No Surprises Act provisions with respect to issuers, providers, facilities, or providers of air ambulance services to adopt a similar approach to enforcement. HHS will not consider a State to be failing to substantially enforce these provisions because the State adopts such an approach.

Once a final decision has been reached in *TMA III*, the Departments and OPM anticipate issuing further guidance on QPA calculations in light of the court's ruling.